UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | )
IRENE GILLISPIE, | )
| )
    Plaintiff, | ) No. 4:14-CV-585 RLW
| )
v. | )
| )
TWIN CITY FIRE INSURANCE COMPANY, | )
| )
    Defendant. | )

## MEMORANDUM AND ORDER

This matter is before the court on Defendant's Motion for Summary Judgment (ECF No. 15) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 22).

## BACKGROUND

On December 10, 2010, Admiral Gillispie's motor vehicle was struck by a vehicle operated by Terry Laney. (Defendant's Statement of Uncontroverted Material Facts in Support of Defendant's Motion for Summary Judgment ("DSUMF"), ¶¶5-6).[1] Irene Gillispie is the surviving spouse of Admiral Gillispie. (DSUMF, ¶3). There are no surviving children or any other parties entitled to recover under Section 537.080, R.S.Mo. (DSUMF, ¶4). The $25,000 limits of liability of Terry Laney's policy were paid to Plaintiff Irene Gillispie by Terry Laney's insurance carrier. (DSUMF, ¶8).

Defendant Twin City Fire Insurance Company ("Twin City") issued an automobile insurance policy, police number 55PHL427436 ("the Policy"), to Plaintiff and Admiral Gillispe. (DSUMF, ¶¶9, 18, 21). The Policy provides coverage on four (4) separate vehicles—a Pontiac

---

[1] Plaintiff purports to incorporate by reference Defendant's Statement of Uncontroverted Material Facts. (ECF No. 24, ¶1).

Grand Prix, a Lincoln Town Car, a GMC Sierra, and a Cadillac DeVille—each with underinsured motorist coverage in the amount of $50,000 per person. (DSUMF, ¶¶19, 20). Plaintiff alleges she has a right to stack the underinsured motorist coverage, for a total of $200,000, provided on each of the four (4) vehicles covered under the terms of the policy. Each count of Plaintiff's Petition alleges coverage for a separate vehicle insured under the terms of the Policy, resulting in four (4) counts alleging the right to stack underinsured motorist coverage. Count V of Plaintiff's Petition alleged a claim for vexatious refusal to pay against Twin City, but Plaintiff later dismissed that count without prejudice. (ECF Nos. 28, 29).

Endorsement A-6193-0 to the Policy provides:

UNDERINSURED MOTORIST COVERAGE—MISSOURI
PART C—UNINSURED/UNDERINSURED MOTORIST COVERAGE—
SECTION II—UNDERINSURED MOTORIST COVEAGE is deleted from the policy booklet 8524 and replaced with this endorsement.

INSURING AGREEMENT

A. We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury:

1. Sustained by an insured; and
2. Caused by an accident.

B. "Insured" as used in this endorsement means:

1. You or any family member.

(ECF No. 16-2 at 16)

LIMIT OF LIABILITY

A. The Limit of Liability shown in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one accident. Subject to this limit for each person, the Limit of Liability shown in the Declarations for each accident for Underinsured Motorist Coverage is our maximum limit of liability for all damages for bodily injury resulting from any one accident.

This is the most we will pay regardless of the number of:

   1. Insureds;
   2. Claims made;
   3. Vehicles or premiums shown in the Declarations; or
   4. Vehicles involved in the accident.

  B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A, Part B or Part C of this policy.

  C. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

  D. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar laws:

   1. Worker's compensation law; or
   2. Disability benefits law.

(ECF No. 16-2 at 17).

OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided by this endorsement:

  1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance coverage on either a primary or excess basis.

  2. Subject to all other provisions of this policy, including but not limited to:

     a. Exclusion A. of this endorsement;
     b. Paragraph A. of the LIMIT OF LIABILITY provision of this endorsement;
     c. Paragraph 1. of the OTHER INSURANCE provision of this endorsement; and
     d. The TWO OR MORE AUTO POLICIES provision of this policy;
     any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for our covered auto, shall be excess over any collectible insurance providing such coverage on a primary basis.

(ECF No. 16-2 at 18).

The Policy also provides, in relevant part:

   TWO OR MORE AUTO POLICIES

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit or our liability under all of the policies shall not exceed the highest applicable limit of liability under any one policy.

\* \* \*

DEFINITIONS

\* \* \*

Other words and phrases are defined. They are in bold face when used.

D. "Bodily injury" means bodily harm, sickness or disease, including death that results. (ECF No. 16-2 at 30).

Plaintiff seeks damages as part of a wrongful death action for injuries suffered by Admiral Gillispie, not based upon her own bodily injuries. Twin City paid one $50,000.00 underinsured motorist policy limit, pursuant to the parties' partial settlement. (ECF No. 27). Twin City agreed to pay Plaintiff, as the spouse/ "family member" of decedent Admiral Gillispie the $50,000 underinsured motorist limit. Plaintiff seeks the additional amount of $150,000.00 in underinsured motorist coverage.

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly

preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

## DISCUSSION

### I. Cross-Motions for Summary Judgment

The Eighth Circuit has clearly recognized that insurance companies can prohibit stacking of underinsured motorist coverage as a matter of contract law:

> As a matter of public policy, Missouri courts have invalidated "attempts by insurance companies to prohibit the stacking of *uninsured* motorist coverage." *Jordan v. Safeco Ins. Co. of Ill.*, 741 F.3d 882, 884 (8th Cir.2014) (emphasis added). But "[b]ecause Missouri does not require UIM coverage, 'the existence of the coverage and its ability to be stacked are determined by the contract entered between the insured and the insurer.'" *Daughhetee v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 1128, 1131 (8th Cir.2014) (quoting *Rodriguez v. Gen. Accident Ins. Co. of Am.*, 808 S.W.2d 379, 383 (Mo.1991) (en banc)). Consequently, "general

> rules of contract construction apply," and the "key" question is whether the policy unambiguously prohibits stacking *or* "is reasonably open to different constructions" as to the permissibility of stacking. *Id.* at 1131–32 (quotations omitted). If the former is true, we must enforce the contract to prohibit stacking; if the latter is true, the policy is ambiguous and we must construe the policy to permit stacking. *See id.* at 1132.

*Midwestern Indem. Co. v. Brooks*, 779 F.3d 540, 545 (8th Cir. 2015). Therefore, the Court looks to whether the Policy at issue in this case is ambiguous and whether it clearly prohibits stacking.

First, the Court recognizes the well-established rule that any ambiguity in an insurance contract must be construed against the drafter, that is, the insurer. *Sargent Const. Co., Inc. v. State Auto. Ins. Co.*, 23 F.3d 1324, 1326 (8th Cir. 1994) ("if an insurance policy is ambiguous, the policy shall be construed against the insurer"); *Robin v. Blue Cross Hosp. Serv., Inc.*, 637 S.W.2d 695, 698 (Mo. 1982) (same). In addition, "'[w]hen interpreting an insurance policy, this court is to give the policy a reasonable construction and interpret the policy so as to afford rather than defeat coverage.'" *Murray v. Am. Family Mut. Ins. Co.*, 429 F.3d 757, 764 (8th Cir. 2005) (quoting *JAM Inc. v. Nautilus Ins. Co.*, 128 S.W.3d 879, 893 (Mo. Ct. App. 2004) (internal citation omitted)).

Twin City argues that its Policy is unambiguous and does not permit stacking. Twin City maintains that the Endorsement in the Policy does not allow stacking of the underinsured motorist limits for the four vehicles on the policy. Paragraph A of the "Limit of Liability" provision provides that the underinsured motorist limit of liability shown in the Declarations for each accident is the maximum limit of liability and the most it will pay regardless of the number of: (1) Insureds; (2) Claims made; (3) Vehicles or premiums shown in the Declarations; or (4) Vehicles involved in the accident. Likewise, the "other insurance" clause states that it is subject to all other provisions of the Policy, including the Limit of Liability provision.

Plaintiff argues that she is entitled to stack the remaining three $50,000 underinsured motorist limits of underinsured motorist liability because the declarations page is ambiguous. (ECF No. 24 at 4). Plaintiff maintains that the "declarations page of the insurance policy describes four separate limits (plural) and four separate UIM coverages (plural)." (*Id.*) Plaintiff states that any conflict between the Policy and the Policy declarations page "creates an ambiguity to be resolved in favor of the insured." (ECF No. 24 at 4-5 (citing *Miller v. Ho Kun Yun*, 400 S.W.3d 779, 784 (Mo. Ct. App. 2013)). Plaintiff contends that "the policy declarations page describes multiple limits of UIM liability and multiple coverages for multiple cars in exchange for multiple premiums; however, the body of the insurance policy attempts to limit defendant's exposure to one single limit and one single UIM coverage." (ECF No. 24 at 5). Plaintiff notes that the Missouri Court of Appeals has cautioned insurance policy writers to describe insurance policy limits singularly, rather than in the plural, if the company intended to prohibit stacking. (ECF No. 25 at 5 (citing *Chandler v. Allied Prop. & Cas. Ins. Co.*, 443 S.W.3d 662, 667 (Mo. Ct. App. 2014)).

Plaintiff also claims that the "Other Insurance Clause" creates an ambiguity by stating "if there is other applicable insurance available under one or more policies or provisions that is similar to the insurance provided by this endorsement any insurance we provide with respect to a vehicle you do not own … shall be excess over any collectible insurance providing such coverage on a primary basis." (ECF No. 24 at 6). Plaintiff argues that a "plain reading" of the "Other Insurance Clause" would suggest that "any insurance provided by Defendant with respect to vehicles not owned by Irene Gillispie, would be excess over any collectible UIM insurance." (ECF No. 24 at 7). Plaintiff claims that the language chosen by Twin City in the "Other Insurance Clause" is at odds with other parts of the Policy discussing underinsured motorist

coverage. (ECF No. 24 at 7). Plaintiff relies on *Ritchie v. Allied Property & Casualty Ins., Co.*, 307 S.W. 3d 132 (Mo. 2009); *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. 2007); *Jordan v. Safeco Ins. Co. of Illinois*, 741 F.3d 882 (8th Cir. 2014); and *Hartford Underwriters Ins. Co. v. Ledbetter*, 353 S.W.3d 645 (Mo. Ct. App. 2011) in support of this proposition.

The Court relies on the decision in *Midwestern Indem. Co. v. Brooks*, 779 F.3d 540 (8th Cir. 2015) to determine that stacking is not permitted in this case. As in *Brooks*, there is a clear Policy provision in this case in this case that precludes stacking. As previously discussed, Paragraph A of the "Limit of Liability" provision provides that the underinsured motorist limit of liability shown in the Declarations for each accident is the maximum limit of liability and the most it will pay regardless of the number of: (1) Insureds; (2) Claims made; (3) Vehicles or premiums shown in the Declarations; or (4) Vehicles involved in the accident. Likewise, the "other insurance" clause, upon which Plaintiff relies, specifically states that it is subject to "Paragraph A. of the LIMIT OF LIABILITY provision of this endorsement." Therefore, the Court finds that underinsured motorist coverage is capped at $50,000 for this incident.

Further, the Court does not find anything in the cited section of the declarations page "which can be reasonably read to counter the Limit of Liability provision's anti-stacking mandate." *Brooks*, 779 F.3d at 546. The Eighth Circuit has held that the policy, not the declarations, provide the insurer's statements to be relied upon:

> In Missouri, "[i]nsurance policies are read as a whole, and the risk insured against is made up of both the general insuring agreement as well as the exclusions and definitions." *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 163 (Mo.2007) (en banc). "The declarations state the policy's essential terms in an abbreviated form, and when the policy is read as a whole, it is clear that a reader must look elsewhere to determine the scope of coverage." *Floyd–Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 221 (Mo.2014) (en banc). "The 'declarations' are introductory only and subject to refinement and definition in the body of the policy." *Peters v. Farmers Ins. Co.*, 726 S.W.2d 749, 751 (Mo.1987) (en banc).

*Brooks*, 779 F.3d at 546. The Court holds that the declarations page cannot override the clear and unambiguous terms of the Policy that prevent stacking.

The Court further finds that the cases cited by Plaintiff can be distinguished from the instant case and Policy at issue. As noted by the Eighth Circuit in *Brooks*, the Other Insurance clause in *Ritchie v. Allied Prop. & Cas. Ins. Co.* is distinguishable because it did not include an express statement that it was subject to all other provisions of the policy, including the Limit of Liability provision prohibiting stacking. *See Brooks*, 779 F.3d at 546, n.5; *Ritchie*, 307 S.W.3d at 137 (Other Insurance provision stated, "*If there is other applicable underinsured motorists coverage available under one or more policies or provisions of coverage:1. Any recovery for damages may equal but not exceed the highest applicable limit for any one vehicle under this insurance or other insurance providing coverage on either a primary or excess basis.* In addition, if any such coverage is provided on the same basis, either primary or excess, as the coverage we provided under this endorsement, we will pay only our share. Our share is the proportion that our limit of liability bears to the total of all applicable limits for coverage provided on the same basis. *2. Any coverage we provide with respect to a vehicle you do not own shall be excess over any other collectible underinsured motorist coverage.*"). Likewise, the policies at issue in *Seeck v. Geico General Ins. Co.* and *Hartford Underwriters Ins. Co. v. Ledbetter* do not include an express statement that the "other insurance" provision was subject to a limitation of liability in another part of the policy. *See Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. 2007) (Excess or other insurance clause provided, "When an insured is occupying a motor vehicle not owned by the insured ... this insurance is excess over any other insurance available to the insured and the insurance which applies to the occupied motor vehicle is primary."); *Hartford Underwriters Ins. Co.*, 353 S.W.3d at 648 ("If there is other applicable

insurance available under one or more policies or provisions of coverage that is similar to the insurance provided by this Part: 1. Any recovery for damages under all policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis. 2. *Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing such coverage on a primary basis.*"). In addition, in the *Hartford Underwriters Ins. Co.* case, the only issue before the Missouri Court of Appeals was whether the driver was entitled to underinsured motorist coverage and the issue of stacking was found to be not ripe for appellate review. *Id.*, at 649 ("Likewise, we do not reach the issue of stacking because we have necessarily limited our review to whether or not the trial court erred in determining that Insured was not entitled to any UIM coverage under the terms of the Policy."). The Court also finds that the Other Insurance clause in *Jordan v. Safeco Ins. Co. of Illinois* is inapposite because the parties in that case "agreed the policy's Other Insurance clause would make the policy ambiguous as to stacking and disagreed only as to whether the policy required the insured to occupy her vehicle—a question not in dispute here." *Brooks*, 779 F.3d at 546, n.5; *see Jordan*, 741 F.3d at 886 ("The Other Insurance clause in the Safeco policies states, 'Any underinsured motorist insurance we provide with respect to a vehicle you do not own shall be excess over any collectible underinsured motorist insurance.'"). Also, the Other Insurance clause in *Jordan* does not include the "subject to" provisions and the no "two or more auto policy provision," which are present in Twin City's Policy. Thus, none of the cases cited by Plaintiff provide a basis for the Court to allow stacking under the Policy terms at issue here.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 15) is **GRANTED** and Plaintiff's Motion for Partial Summary Judgment (ECF No. 22) is **DENIED**. Plaintiff's request for oral argument is **DENIED**. An appropriate Judgment is filed herewith.

Dated this 23rd day of June, 2015.

*Ronnie L. White*

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**